# NOTES FOR LIQUIDATION ANALYSIS
*In re SecureSolutions LLC, Case No. 11-11581-BLS (Chap. 11)*

1. It is difficult to project the amount of available cash on the date of a hypothetical conversion of the case. The Debtor projects that the amount, if any, will be negligible in comparison to the total amount of claims against the Debtor's bankruptcy estate.

2. On its Schedules, the Debtor reported accounts receivable on the Petition Date totaling $189,246.54. Approximately $168,000 of these amounts, however, were greater than 90 days old, and many of those receivables are considered difficult to collect or uncollectable.

3. On its Statement of Financial Affairs, the Debtor disclosed only the following potential litigation claims:

 (A) A series of payments within the 90 days before the Petition Date to a creditor called Flatiron Capital totaling $7,719.09 may be recoverable as preferential transfers. Based upon the Debtor's review of these payments, however, the Debtor believes that they will not be recoverable by a Chapter 7 trustee because (i) the aggregate amount of such claims falls below the "floor" established by most trustees for the recovery of avoidable transfers, (ii) a Chapter 7 trustee would have no institutional knowledge concerning the facts and circumstances surrounding the payments, and (iii) the applicability of the most commonly asserted defenses to preference claims—namely the new value defense and ordinary course of business defense—render the claim unattractive for pursuit.

 (B) Payments of salary to the Debtor's officer, James Pitts, and his wife (who serves as the Debtor's bookkeeper) were made within one year before the Petition Date totaling approximately $50,000 in the aggregate, which may be recoverable as preferential transfers. The Debtor believes that these payments will not be recoverable by a Chapter 7 trustee because (i) the aggregate amount of such claims is relatively low, (ii) a Chapter 7 trustee would have no institutional knowledge concerning the facts and circumstances surrounding the payments, and (iii) the last payments made to the individuals in question were in September 2010, but these individuals continued working for the Debtor through the Petition Date (late May 2011) without further salary, thus giving rise to a very strong new value defense, and (iv) a trustee is cautious of spending estate monies bringing suit against individual defendants due to collection risk.

 (C) A $40,000 payment was made to Mirabilis on August 10, 2010 in settlement of claims asserted between Mirabilis's bankruptcy estate and the Debtor, in accordance with a settlement agreement. The Debtor believes that a Chapter 7 trustee would recover only a small fraction of this payment, because (i) Mirabilis asserted a claim against the Debtor in excess of $1 million, purportedly secured by a blanket lien on substantially all of the Debtor's assets, and avoidance of the $40,000 payment in question may result in the reinstatement of that secured claim, and (ii) in light of the multiplicity of claims between the parties, touching on issues of fraud, debt versus equity, and other very fact-intensive causes of action, further litigation between a Chapter 7 trustee and Mirabilis over $40,000 would not be cost-effective.

In light of the foregoing, the Debtor believes that a Chapter 7 trustee would be unable to recover anything on account of litigation claims beyond nuisance value. It should be noted that the Debtor has preserved the right, on behalf of the Liquidation Trustee, to bring these same claims under the Plan.

4. It is difficult to project the operating expenses that a Chapter 7 trustee may incur, but the Debtor anticipates that a hypothetical Chapter 7 trustee would incur expenses associated with reviewing and analyzing the Debtor's books and records, managing the Debtor's assets, administering claims, and pursuing any applicable litigation claims.

5. It is difficult to project statutory fees due under 28 U.S.C. § 1930(a)(6) because those amounts are calculated by a sliding scale depending on the timing of payment. The Debtor is projecting that there will be only one quarter remaining in Chapter 11 before this case was closed, whereas a Chapter 7 trustee would be liable for one or two quarters, depending upon the timing of the hypothetical conversion.

6. On its Schedules, the Debtor reported tax claims purporting to be secured on Schedule D. Those that were not secured by actual collateral, however, were scheduled as having no secured amount. The form of Schedule D, however, does not distinguish between unsecured priority claims and unsecured non-priority claims, and the Debtor has not performed such an analysis at this time. The Debtor believes that the only claims, if any, that will ultimately be entitled to priority will be (i) a salary claim in favor of James Pitts capped at $11,725, and (ii) claims asserted against the Debtor for monies withheld (fraudulently, by Mirabilis and its affiliate) from employees' paychecks but never turned over to the applicable taxing authorities, totaling approximately $77,000.

7. These include projected general unsecured claims, as well as Schedule D claims not secured by collateral and Schedule E claims not entitled to priority.