IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 11-11581 (BLS) |
| SECURESOLUTIONS LLC, | |
| | **Objection deadline to Bidding Procs.: July 23, 2014, 4:00 p.m.**[1] |
| Debtor. | **Hearing on Bidding Procs.: July 30, 2004, 9:00 a.m.** |
| | **Obj. Deadline to Sale:  September 16, 2014, 4:00 p.m.** |
| | **Bid Deadline:  September 16, 2014, 4:00 p.m.** |
| | **Auction Date:  September 22, 2014, 10:00 a.m.** |
| | **Hearing Date:  September 24, 2014, 10:30 a.m.** |

**DEBTOR'S MOTION FOR
(I) APPROVAL OF SOLICITATION PROCEDURES
AND BIDDING PROCEDURES, INCLUDING FORM AND
MANNER OF NOTICE OF SALE; AND (II) APPROVAL OF
SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, INTERESTS, AND OTHER ENCUMBRANCES**

SecureSolutions LLC, debtor in possession (the "Debtor"), by its undersigned attorneys,

files this Motion For:

(i)     Approval of Solicitation Procedures and Bidding Procedures, Including Form and
Manner of Notice of Sale; and

(ii)    Approval of Sale Of Substantially All Of The Debtor's Assets Free And Clear Of
Liens, Claims, Interests, And Other Encumbrances,

and in support hereof states as follows:

<u>JURISDICTION</u>

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>BACKGROUND</u>

2.      On May 23, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has

---

[1] Certain dates in this caption are subject to further order of the Court.

managed its affairs as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3.    The Debtor operates a business providing security guard services to third-party customers in the commercial and public sectors. Focusing on such qualities as the experience of its management, the quality of its training, and its responsiveness to customer needs, the Debtor targets clients in such industries as shopping centers, college campuses, healthcare facilities, and government offices.

4.    The Debtor's financial distress arose from a fraud perpetrated upon it in 2006 by an investor called Mirabilis Ventures, Inc. ("Mirabilis") and its affiliate Common Paymaster H Corporation ("Common Paymaster") for withholding, embezzling, and failing to turn over payroll taxes to the applicable authorities. Although Common Paymaster was in place for only a few short months, its embezzlement had a devastating effect on the Debtor's ability to carry out its operations. The Debtor faced a severe liquidity crisis, and as taxing authorities began recovery proceedings, the Debtor was subject to a number of threatened and actual seizures.  In addition to the loss of assets resulting from these seizures, the Debtor's customers became increasingly nervous because they were served with executions before the Petition Date.

5.    Absent the debts resulting from the foregoing fraud, the Debtor believed that its business operations could be made profitable, but only through additional investment into sales and working capital as needed to support growth.  The Debtor had several contracts with customers that can be cited as past performance, and has additional prospects for future business, so long as its creditors do not execute upon its receivables and reduce customer confidence in the Debtor's continuing viability.

6.      Under the Debtor's First Amended Plan of Reorganization (Docket No. 58) (as amended or supplemented, the "Plan") filed on August 26, 2011, the Debtor proposed to reorganize its affairs and make payments to its prepetition creditors on an unsecured basis over several years. The funds necessary to make these payments were to be derived from the Debtor's ongoing business operations and from a Teaming Agreement (the "Teaming Agreement") that it entered into with a third party called Securiguard, Inc. ("SGI"). Under the Teaming Agreement, the Debtor would tap its contacts within a certain marketplace in order to benefit SGI, and after certain cost-sharing, SGI agreed to share its profits with the Debtor.

7.      On October 24, 2011 (the "Confirmation Date"), the Court entered an order (Docket No. 90) (the "Confirmation Order") confirming the Plan. The Confirmation Order is final and non-appealable, and the statutory period for revocation has passed.

8.      The terms of the Plan do not become effective until an Effective Date occurs. Among the conditions for the occurrence of the Effective Date under the Plan is that "[t]he Debtor and Liquidation Trustee shall determine, in their sole discretion, that they have sufficient Cash on hand (or can provide timely Cash) to make timely Distributions sufficient (including allocating Cash to reserves as provided in this Plan) to make payments in respect of all Allowed Administrative Claims, Fee Claims, Priority Tax Claims, and Priority Non-Tax Claims required under the Plan . . . ." Plan § 10.1(c).

9.      The Effective Date under the Plan still has not occurred because the Debtor was not able to determine that it has sufficient cash to fund the Plan. Specifically, SGI used the Debtor's connections to generate business for itself, then breached the Teaming Agreement as soon as the Debtor's share of costs were applied. Although the Debtor is exploring its options with respect to enforcing its rights and remedies against SGI, its breach of the Teaming

Agreement has deprived the Debtor of critical cash to meet its projected obligations under the Plan. Thus, it became necessary for the Debtor to explore other options for exiting this case.

10.     The Debtor believes that its business operation has enterprise value as a going concern, and therefore it intends to liquidate that value in an expeditious sale process, make distributions to creditors, and close this case. If the sale results in sufficient cash to meet the Debtor's obligations under the Plan, then the Debtor will declare an Effective Date under the Plan and the case can be closed in due course. If the sale does not result in sufficient cash, the Debtor will seek a structured dismissal of this case, in which the cash of the Debtor will be disbursed to creditors and the case will be dismissed.

<u>RELIEF REQUESTED</u>

11.     By this Motion, the Debtor requests entry of two separate orders, to be considered at successive hearings.

12.     First, the Debtor seeks the entry of an order (the "Procedures Order"), substantially in the form of **Exhibit A** attached hereto, approving certain procedures to be employed in connection with the sale of the Debtor's assets, approving the form and manner of notice of the proposed sale and bidding procedures, and scheduling certain events and deadlines in connection with the proposed sale.  The Procedures Order will also establish deadlines by which parties must object to the sale.  Finally, the Procedures Order will schedule the date and time of a hearing to consider final approval of the Debtor's proposed sale.

13.     Second, the Debtor seeks the entry of an order approving the sale of substantially all the Debtor's assets free and clear of liens, claims, interests, and other encumbrances (the "Sale Order"), substantially in the form of **Exhibit B** attached hereto. The Sale Order would authorize and approve the proposed sale pursuant to an agreement (obtained in accordance with

the approved bidding procedures) that provides the Debtor's estate with the highest and best value for its assets.

I.    BASIS FOR SALE.

14.    The Debtor believes that the value of its assets are difficult to determine, because it operates a business in a marketplace in which going-concern sales are infrequent and public data for comparable sales is virtually non-existent. The Debtor's saleable assets consist of a combination of its ongoing contracts and goodwill. In the Debtor's opinion, the Debtor's assets would have minimal or no value unless the Debtor continued operations through closing on the sale.

15.    The Debtor's management is not a broker or investment banker, but because the Debtor's industry is so small, the Debtor's president believes that he can reach all persons that would reasonably expect to have an interest in acquiring the Debtor's business. There are relatively few players in the industry, and the Debtor has not been made aware of businesses or investors outside of the industry that might be interested in acquiring a business of this sort. Because the Debtor's finances are so small, the costs of marketing and locating willing buyers might consume a material portion of the total proceeds that might be realized. Therefore, the Debtor may pursue a sale process without the assistance of a broker. If the Debtor determines that its management cannot adequately pursue the appropriate leads, it will file a separate application to retain a broker.

II.    APPROVAL OF SOLICITATION PROCEDURES.

16.    To solicit potential bidders, the Debtor's management will identify as many businesses in this sector as possible which, in their opinion, are likely to have an interest in bidding on the Debtor's assets (collectively, the "Potential Purchasers"). The Potential

Purchasers will be selected based on a number of criteria, including but not limited to the Debtor's perception of (i) their interest in acquiring, merging with, partnering with, or investing in businesses in the Debtor's industry; (ii) their interest in adding the Debtor's trademark, brand, and related intellectual property to their portfolio; (iii) their interest in expanding their market share in the Debtor's industry, including but not related to customer base, geographic base, and customer industry; (iv) their interest in preventing additional competitors from entering the Debtor's industry to replace the Debtor's business; and (v) their interest in obtaining a turn-key business with trained employees and a supporting infrastructure.

17.     Prior to or shortly after the first hearing on this motion, the Debtor will send a notice to each of the Potential Purchasers indicating the Debtor's intention to sell substantially all of its assets free and clear of liens, claims, interests, and other encumbrances.  Notices will also be sent to persons that had previously contacted the Debtor to inquire about a potential purchase of the Debtor's assets.  Moreover, as part of the solicitation process, the Debtor may publish notice in one or more trade journals that the Debtor believes are commonly reviewed by merchants in the Debtor's industry.  (The foregoing service of notice and publication of notice are referred to herein as the "Solicitation Procedures") Although the Court had not previously approved the form of these notices or the sale procedures described below, the purpose of these notices was and will be to alert the Potential Purchasers that they should contact the Debtor to execute confidentiality agreements and begin conducting whatever due diligence may be necessary in anticipation of an imminent sale.  The Debtor therefore requests that the Court approve the Solicitation Procedures as being reasonably calculated to lead to the highest and best offer for the sale of the Debtor's assets. (As noted above, if the Debtor determines that additional solicitation by a broker is warranted, the Debtor will file a separate application to employ one)

C.    SALE PROCEDURES.

18.    To govern the sale of the Debtor's assets (the "Sale"), the Debtor proposes that the Court enter a preliminary order (the "Sale Procedures Order") containing the following procedures, deadlines, and forms (each a "Sale Procedure," and collectively, the "Sale Procedures"):

Bidding Procedures.

(A)    Any person desiring to make a bid for substantially all of the Debtor's estate's assets other than cash (each a "Bidder," and collectively, the "Bidders") shall submit to the Bidding Receipt Agent:

    (i)    A confidentiality agreement in such form acceptable to the Debtor;

    (ii)    Proof of financial ability to close on the sale transaction; and

    (iii)    An originally signed binding offer to purchase substantially all of the Debtor's assets for a stated price and the manner and timing of such payment.

(each a "Bid," and collectively, the "Bids").

(B)    For purposes of these procedures, the "Bidding Receipt Agent" is Brian L. Arban, Hiller & Arban, LLC, 1500 North French Street, 2nd Floor, Wilmington, Delaware 19801, (302) 442-7676, barban@hillerarban.com. At any time, the Debtor may change the identity and/or contact information for the Bidding Receipt Agent by filing a notice with the Court.

(C)    To be a "Qualified Bid," a bid must:

    (i)    Be a Bid (pursuant to the definition set forth above);

    (ii)    Be received (a) in its originally signed original form by the Bidding Receipt Agent on or before September 16, 2014 at 4:00 p.m. Eastern Time (the "Bidding Deadline"), (b) by electronic mail on or before the Bidding Deadline, so long as the original is actually received by the Bidding Receipt Agent within 48 hours thereafter, or (c) in such manner and by such date and time as the Bidding Receipt Agent in its sole discretion shall agree in writing;

    (iii)    Contain information which the Debtor, in its discretion, believes is adequate to describe the asset(s) proposed to be purchased, the consideration offered for the proposed purchase, and any other salient terms proposed in the Bid (a definitive asset purchase agreement is strongly recommended); provided that in the Debtor's discretion, a Bid which is not a Qualified Bid pursuant to the terms of this subparagraph when it is received can subsequently become

a Qualified Bid in the event sufficient information is subsequently furnished and relate back to the date that the Bidding Receipt Agent received the original Bid;

   (iv)   Be accompanied by a fully executed coversheet in the form attached hereto as Exhibit A-1 (the "Bid Coversheet"); and

   (v)   Be accompanied by a earnest money deposit in the amount of $20,000 (including as later supplemented, the "Deposit") in the form of certified check, cashier's check, or money order payable to "SecureSolutions LLC" and provide that such Bid shall remain open and irrevocable until the earlier of the end of the second business day following the closing of the Sale;

   (vi)   Not be subject to any financing contingency, contingency relating to the completion of unperformed due diligence, contingency relating to further internal or external approvals or consents (other than the Court in this case), and must state that it has been approved (subject to stated conditions) by any, and all, governing bodies or investors (e.g., board of directors or minority partners entitled to approval);

   (vii)   Not be subject to any overbid protections, breakup fees, or other obligations of the Debtor regarding the bidding process; and

   (viii)   Clearly identify the Bidder, the person(s) for whom the Bid is submitted, all majority investors in and affiliates of the Bidder, and all connections that the Bidder has with the Debtor, the Debtor, any of the Debtor's employees, officers, or directors, and any of the Debtor's known competitors.

(D)   After the Bidding Deadline, the Debtor shall determine which of the Bids are Qualified Bids. Where the Debtor receives only one Qualified Bid, the Debtor may choose not to hold an auction and treat the Bidder thereof as the "Winning Bidder" and its Bid as the "Winning Bid."

(E)   In the event that the Debtor determines that two or more Bids are Qualified Bids, the Debtor shall conduct an auction (the "Auction") beginning on September 22, 2014 at 10:00 a.m. Eastern Time (the "Auction Date") and continuing until concluded. Only Bidders submitting Qualified Bids may participate in the Auction, except that the Debtor may permit other Bidders to participate in the event that they submit a Qualified Bid before the Auction. The Auction shall take place at the law offices of Hiller & Arban, LLC, 1500 North French Street, 2nd Floor, Wilmington, Delaware 19801, or at such other place as the Debtor shall give at least 48 hours' notice to each of the Bidders invited to participate. The Debtor may establish such administrative rules regarding the conduct of the Auction as it deems appropriate, including but not limited to bidding increments, personal attendance requirements, adjournments, exclusions of visitors, the time allotted for making competing bids, the

sequence of submission of competing bids, and the manner of making competing bids. The Debtor may in its discretion, but is not required to, retain an auctioneer to conduct the Auction.

(H)    Every person that submitted a Bid before the Auction shall be considered to have made an irrevocable opening offer in accordance with the terms of such Bid. All other bids made at the Auction shall be considered binding, irrevocable offers for the purchase of the Debtor's estate's assets, except as expressly stated. At the Auction, in the event that a Bidder makes a competing bid that the Debtor does not consider a higher and better offer than a bid previously submitted by any party, the Debtor may reject the Bid and, in its discretion, may (but shall not be required to) advise the Bidder how much higher such bid would need to be (or what terms would be required to change) in order to be deemed higher and better than the previously submitted bids. The Bid at the Auction deemed by the Debtor to be the highest and best offer is the "Winning Bid" and the Bidder making the Winning Bid is the "Winning Bidder." By submitting a Bid, each Bidder agrees that it lacks standing to object to the Debtor's determination that its Bid or any other Bid constitutes (or does not constitute) the Winning Bid. Every Bidder submitting a Bid at the Auction shall be deemed to agree that if it is the successful bidder at the Auction, such Bidder shall provide the Debtor with a supplemental deposit which, when added to the initial Deposit payment, shall be at least 15% of the total Winning Bid.

(I)    Immediately prior to the conclusion of the Auction (except to the extent otherwise agreed by the Debtor and the Winning Bidder), the Bidder or bidders making the Winning Bid shall sign all agreement(s), contract(s), instrument(s) or other document(s) evidencing and containing the terms and conditions upon which such bid was made, if it has not already done so.

(J)    In addition to selecting the Winning Bid, the Debtor may select the Bid (whether submitted at the Auction or in accordance with the bid procedures described above) which, other than the Winning Bid, constitutes the highest and best offer (the "Next Highest Bid" and the Bidder making such Bid is the "Next Highest Bidder").

(K)    All Bidders shall conduct whatever due diligence they require solely at their own expense, and all participation in the Sale, including but not limited to the Auction, shall be at each Bidder's sole expense. The Debtor shall not be required to furnish any Bidder with any overbid protections and any such provisions in a Bid shall be unenforceable except to the extent otherwise expressly and specifically agreed by the Debtor and, if appropriate, approved by the Court.

(L)    The Debtor reserves the right to reject at any time prior to the entry of an order of the Court approving a sale of the Debtor's assets, any offer which the Debtor deems to be (i) inadequate or insufficient, (ii) not in conformity

with the terms and conditions of the Sale set forth herein, or (iii) contrary to the best interests of the Debtor's estate and its creditors. The Debtor will have no obligation to accept or submit for court approval any offer presented prior to, at, or after the Auction, and no Bidder shall have standing to object to the Debtor's determination in this regard.

Sale Hearing.

(M)    Any objections to approval of the Sale must be made in writing and filed with the Court on or before September 16, 2014 at 4:00 p.m. (Eastern Time). A hearing to consider approval of the Sale (the "Sale Hearing") shall be conducted by the Court on September 24, 2014 at 10:30 a.m. (Eastern Time) or at such other time as the Court directs.  In the event the Court desires to approve the Sale, the Court will enter an order approving the Sale (the "Sale Order").

(N)    Subject to entry of the Sale Order, the Debtor shall sell, and the Winning Bidder shall purchase, the agreed portion of the Debtor's assets free and clear of all liens, claims, interests, and encumbrances, in accordance with the terms of the Winning Bid, and closing shall occur on or before the seventh day after entry of the Sale Order (the "Closing Date").

(O)    In the event the Winning Bidder fails to consummate the Sale on or before the Closing Date, or in the event the Winning Bidder repudiates its obligation to consummate the Sale prior to the Closing Date, then upon service of a notice by the Debtor to the next Highest Bidder, the next Highest Bidder shall become the Winning Bidder, the Next Highest Bid shall become the Winning Bid, and the Debtor shall be authorized, but not required, to consummate the Sale pursuant to the Sale Order with the Next Highest Bidder in accordance with the terms of the Next Highest Bid without further order of the Court. In such case, the Winning Bidder's Deposit shall be immediately forfeited to the Debtor, and the Debtor reserves the right to seek any further damages from the Winning Bidder on account of the default.

(P)    Except as expressly provided in the Bid, any Sale of the Debtor's estate's assets shall be without representation or warranties of any kind, nature or description by the Debtor, its agents, or the Debtor's estate, and all such assets shall be transferred "as is," "where is" and "with all faults."  THE DEBTOR EXPRESSLY DISCLAIMS, AND SHALL BE DEEMED TO HAVE DISCLAIMED, ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE DEBTOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET.

Procedures Relating to Deposits.

(Q)    All Deposits shall be subject to the jurisdiction of this Court and, except as otherwise provided herein, shall be returned by the Debtor to the unsuccessful bidders as soon as reasonably practicable after the closing of the Sale, except as otherwise provided herein.

(R)    All Deposits shall be held uncashed by counsel for the Debtor until closing or until otherwise required to be returned in accordance with these procedures. In the event of a dispute concerning the Debtor's right to retain any Deposit, counsel shall have no liability to any person for the failure to return or deliver (or delay in returning or delivering) such Deposit, and the bidder's sole remedy shall be to seek relief from this Court to compel the return of the Deposit. In the event of a dispute, the Debtor or its counsel may interplead the Deposit (or any disputed portion thereof) into the registry of the Court subject to further order. In the event the Debtor or its counsel, in their discretion, deem it necessary or appropriate to interplead such funds into the registry of the Court, the the interpleading party may surcharge its costs, including reasonable attorney's fees, against such funds, after court approval.

Reservation of Rights.

(S)    The Debtor reserves the rights to: (i) impose at or before the Auction such other and additional terms and conditions as may be in the interest of the Debtor's estate and its creditors (so long as such terms are not materially inconsistent with the terms of the Sale Procedures); (ii) extend any of the deadlines set forth in the Sale Procedures other than hearing dates; (iii) adjourn the Auction at or before the Auction; (iv) adjourn the Sale Hearing, subject to the Court's direction; (v) waive any terms or conditions set forth in these Bidding Procedures; and (vi) withdraw from the Auction some or all of the Debtor's assets at any time prior to or during the Auction or cancel the Auction.

(T)    The sale of the Debtor's estate's assets shall not include any cash, bank accounts, or causes of action (other than trade receivables recoverable in the ordinary course of business), and any reference to the sale of "substantially all" assets shall be interpreted to exclude these assets.

(U)    The Sale shall be subject to allowing the Debtor reasonable access to the Debtor's books and records for the administration of this case, claims, and causes of action after the closing, whether or not such access is granted in the Winning Bid and/or the closing documents.

<u>AUTHORITY FOR RELIEF REQUESTED</u>

A.    <u>AUTHORITY FOR DEBTOR'S SALE OF ASSETS</u>.

19.    Section 363(b) of the Bankruptcy Code provides authority for a trustee and, through the application of § 1107(a), a debtor-in-possession, "after notice and a hearing, [to] use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The authority to sell assets conferred upon a debtor by § 363(b) "include[s] a sale of substantially all the assets of an estate."  <u>Otto Preminger Films, Ltd, v. Ointex Entertainment, Inc. (In re Ointex Entertainment, Inc.)</u>, 950 F.2d 1492, 1495 (9th Cir. 1991). Further, § 105(a) of the Bankruptcy Code allows the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

20.    A bankruptcy court's power to authorize a sale under § 363(b) is to be exercised at the court's discretion. <u>In re WPRV-TV. Inc.</u>, 983 F.2d 336, 340 (1st Cir. 1993); <u>New Haven Radio. Inc. v. Meister (In re Martin-Trigona)</u>, 760 F.2d 1334, 1346 (2nd Cir. 1985); <u>Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1069 (2nd Cir. 1983).

21.    Courts in the Third Circuit, as well as other courts, have authorized the sale of all or substantially all of a debtor's assets pursuant to § 363(b) of the Bankruptcy Code or in the absence of a reorganization plan where there is a "sound business purpose." <u>In re Delaware & Hudson Rv. Co.</u>, 124 B.R. 169 (D. Del. 1991); <u>Titusville Country Club v. Penn Bank (In re Titusville Country Club)</u>, 128 B.R. 396 (Bankr. W.D.Pa. 1991); <u>In re Industrial Valley Refrig. and Air Conditioning Supplies, Inc.</u>, B.R. 15 (Bankr. E.D. Pa. 1987). <u>See</u> also <u>Stephens Indus.. Inc. v. McClune</u>, 789 F.2d 386 (6th Cir. 1986); <u>In re Lionel Corp.</u>, 722 F.2d at 1071 (setting forth the "sound business purpose" test in the context of a sale of assets under § 363(b)).  A debtor's

showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D.Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071.

22.    In this case, the "sound business purpose" test is met because while the Debtor's business can operate profitably on an ongoing basis, it cannot operate profitably if it has to satisfy its prepetition obligations. Although Chapter 11 protection has protected the Debtor's assets from being dismembered by aggressive creditor action, the Debtor does not feel it can reasonably remain in Chapter 11 forever. The best way to maximize value, in the Debtor's opinion, is to realize its going-concern value for the benefit of creditors.

23.    Courts have also required that the sale price be fair and reasonable and that the sale be the result of good faith negotiations with the buyer. In re Abbotts Dairies of Pa., 788 F.2d 143, 147-50 (3rd Cir. 1986); In re Tempo Tech. Corp., 202 B.R. 363, 367 (D. Del. 1996), aff'd sub nom. Diamond Abrasives Corp. v. Temtechco. Inc. (In re Temtechco, Inc.), 141 F.3d 1155 (3rd Cir. 1998); In re Industrial Valley, 77 B.R. at 22; In re Stroud Ford, Inc., 163 B.R. 730 (Bankr. M.D.Pa. 1983); See also In re Ewell, 958 F.2d 276 (9th Cir. 1992) (declining to set aside or modify a sale pursuant to section 363 of the Bankruptcy Code because the price was fair and reasonable and the buyer was a good faith purchaser pursuant to § 363(m) of the Bankruptcy Code).

24.    While the Bankruptcy Code does not define "good faith," courts in the Third Circuit have held that for purposes of § 363(m), a "good faith purchaser" is one who buys "in good faith" and "for value" and that lack of good faith is shown by fraud, collusion, or an

attempt to take grossly unfair advantage of other bidders. In re Abbots Diaries of Pa., 788 F.2d at

147; In re Tempo Technology Corp., 202 B.R. at 367.

25.     Any Bid treated as the Winning Bid will, by virtue of the procedures, be the

product of good faith and arms-length negotiations between the Debtor and the Purchaser. The

price and the form and structure of the offer proposed by the Winning Bidder will have been

tested in the marketplace, because all reasonably known potential purchasers will have had an

opportunity to submit a bid. In the Debtor's opinion, the Bidding Procedures are intrinsically fair

to all parties and are designed to permit the Debtor to obtain the best possible price. Thus, the

Debtors are confident that the winning bid that emerges from this process will truly be the

highest and best bid obtainable for the Purchased Assets.

26.     The Debtor respectfully submits that the proposed sale of the Debtor's assets is

entirely consistent with the guidelines set forth by the Third Circuit. The Debtor believes that a

prompt sale is in the best interest of the Debtor, its creditors, and its estate and will maximize the

amount that the Debtor, its creditors, and its estate may realize for the value of the Debtor's

assets. The terms and conditions of the Auction and the Bidding Procedures are fair and

reasonable.

27.     Additionally, § 105(a) of the Bankruptcy Code provides a bankruptcy court with

broad powers in the administration of a case under the Bankruptcy Code. Section 105(a)

provides that "[t]he court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided

that a bankruptcy court does not employ its equitable powers to achieve a result not

contemplated by the Bankruptcy Code, the exercise of its § 105(a) power is proper. In re Fesco

Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus),

280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to § 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian). 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code"); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

28.     Therefore, the Bidding Procedures and the Sale should be approved.


B.     AUTHORITY FOR SALE FREE AND CLEAR.

29.     The Debtor requests authorization for the sale of its assets to be free and clear of liens, claims and encumbrances and other interests. Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property under § 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

(a)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(b)     such entity consents;

(c)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)     such interest is bona fide dispute; or

(e)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30.    Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by § 363(f). See, e.g., In re Trans World Airlines, Inc., 2001 WL 1820325, at *3, 6 (Bankr. D.Del. Mar. 27, 2001); Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

31.    In this case, the only known holders of liens, claims, interests or other encumbrances on or against the Debtor's assets are Allegiance Capital LP ("Allegiance") and the Internal Revenue Service (the "IRS"). Allegiance's financing statement expired before the Petition Date, so the Debtor proposed under the Plan that it be treated as a general unsecured claim, and Allegiance (which supported the Plan) did not oppose this relief. Therefore, to the extent that they are Allegiance's collateral, the Debtor's assets may be sold free and clear of Allegiance's liens, claims, and encumbrances pursuant to § 363(f).

32.    With respect to the IRS's secured claims, the Debtor has objected to the IRS's secured claims and asserts that those liens have value of only the Debtor's hard equipment as it existed on the Petition Date (which the Debtor valued at $2,691.99 according to the bankruptcy schedules). Although the Court has not resolved that dispute, this gives rise to a bona fide dispute over the validity and amount of those liens. Therefore, the Debtor's assets may be sold free and clear of the IRS's liens, claims, and encumbrances pursuant to § 363(f).

33.    The Debtor is not aware of any other holder of liens, claims, interests or other encumbrances on or against the Debtor's assets.  To the extent any person asserts liens, claims, interests or other encumbrances on or against the Debtor's assets, they are disputed by the Debtor.

34.    A sale of the Debtor's assets other than one free and clear of liens, claims, interests and other encumbrances would be of substantially less benefit to and would adversely affect the Debtor's bankruptcy estate.  Upon information and belief, no potential Bidder would submit a bid for any of the Debtor's assets if it believes that Allegiance, the IRS, or another party in interest will foreclose upon a lien on them.

35.    Therefore, grounds exist to authorize the Debtor to sell its assets free and clear of liens, claims, interests, and other encumbrances

C.    THE SALE IS IN GOOD FAITH PURSUANT TO § 363(M).

36.    As discussed above, the "good faith" prong of the Abbotts Dairies standard is also satisfied here. The Debtors request that the Court expressly determine that the Purchaser is entitled to the benefits and protections provided by § 363(m) of the Bankruptcy Code in connection with the Sale.

37.    Section 363(m) of the Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) ... of this section of a sale ... of property does not affect the validity of a sale ... under such authorization to an entity that purchased . .. such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

38.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to § 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. By its terms, § 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets. Additionally, the Third Circuit has indicated that § 363(m) also protects the Debtor of a debtor's interest in executory

contracts under § 365 of the Bankruptcy Code. <u>Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.</u>, 141 F.3d 490, 497-98 (3rd Cir. 1998). In <u>Krebs</u>, the Court considered "whether assignments of [certain automobile dealership] franchises under section 365 are also sales of estate property subject to section 363(m)." <u>Id.</u> at 497. Despite the absence of an explicit reference to assignments of executory contracts under § 365 of the Bankruptcy Code, the Court in <u>Krebs</u> concluded that § 363(m) of the Bankruptcy Code protected an assignment of a debtor's interest in certain automobile franchise agreements pursuant to an auction sale.   Like the franchise agreements protected in <u>Krebs</u>, the Assigned Contracts are executory contracts that may be assumed and assigned pursuant to § 365 of the Bankruptcy Code. In light of <u>Krebs</u>, the Debtor respectfully submits that § 363(m) applies to protect the Purchaser with respect to the Assigned Contracts, in addition to any other purchased assets.

39.     As required by § 363(m) of the Bankruptcy Code, the Bidding Procedures have been proposed in good faith and provide for both the Debtor and the potential purchaser to act in good faith in negotiating the Sale and the assignment of the Assigned Contracts. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing § 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" <u>Abbotts Dairies</u>, 788 F.2d at 147. To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." <u>Id.</u> (citing <u>In re Rock Indus. Mach. Corp.</u>, 572 F.2d 1195, 1198 (7th Cir. 1978)). <u>See also</u> <u>In re Bedford Springs Hotel, Inc.</u>, 99 B.R. 302, 305 (Bankr. W.D.Pa. 1989); <u>In re Perona Bros., Inc.</u>, 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an

actor's] conduct during the sale proceedings." In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1998 (7th Cir. 1978)).

40.     Here, the sale of assets is in good faith. There is no evidence of fraud or collusion. To the contrary, as discussed throughout this Motion, and as will be further demonstrated at the Sale Hearing, the Bidding Procedures are calculated to prevent collusion by giving all persons the opportunity to buy the assets for their fair value under a uniform set of procedures.  The Sale will be the culmination of a solicitation process in which all parties are expected to be sophisticated and represented by professionals. No known potential bidder is an insider of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code, and all negotiations have been and will continue to be conducted on an arms-length, good-faith basis. Under the circumstances, the Purchaser should be afforded the protections that § 363(m) of the Bankruptcy Code provides to a good-faith purchaser. Furthermore, the solicitation efforts made by the Debtor and the Bidding Procedures are designed to prevent the Debtor or any Bidders from engaging in any conduct that would cause or permit the Sale to be avoided under § 363(n) of the Bankruptcy Code.

41.     All parties in interest will receive notice of the proposed Sale (by receiving copies of this motion) and will be provided with an opportunity to be heard. The Debtor submits that such notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under §§ 363(b) of the Bankruptcy Code.

F.     RELIEF FROM THE WAITING PERIOD FED. R. BANKR. P. 6004(H) IS APPROPRIATE.

42.     Fed. R. Bankr. P. 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise." The Debtor requests that the Sale Order be effective immediately by providing that the 14-day stay under Fed. R. Bankr. P. 6004(h) be waived.

43.     The purpose of Fed. R. Bankr. P. 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Fed. R. Bankr. P. 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten-day stay period, Collier suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev. ¶ 6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

44.     Accordingly, the Debtor hereby requests that the Court waive the 14-day stay period under Fed. R. Bankr. P. 6004(h) in the Sale Order.

<u>NOTICE</u>

45.     Notice of this Motion has been served upon: (i) all known creditors of the Debtor, (ii) the attorney for the United States Trustee; and (iii) all parties requesting notice under Del. Bankr.LR 2002-1.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

WHEREFORE the Debtor respectfully requests that the Court grant the relief requested hereinabove, by:

(A)     Entering a Procedures Order, substantially in the form of **Exhibit A** attached hereto; and

(B)     Entering a Sale Order, substantially in the form of **Exhibit B** attached hereto, in which the identity of the Purchaser and the terms of the Winning

Bid shall be inserted upon selection thereof by the Debtor in accordance with the Sale Procedures; and

(C)     Granting such further relief as this Court deems just and proper.


Dated: July 2, 2014                          Respectfully submitted,
           Wilmington, Delaware
                                             HILLER & ARBAN, LLC


                                             **/s/ Adam Hiller**
                                             Adam Hiller (DE No. 4105)
                                             Brian Arban (DE No. 4511)
                                             1500 North French Street, 2nd Floor
                                             Wilmington, Delaware 19801
                                             (302) 442-7676 telephone
                                             ahiller@hillerarban.com

                                             *Attorneys for the Debtor*